JOSEPH DEIBEIKIS, Appellant, *vs.* THE LINK-BELT COMPANY, Appellee.

*Opinion filed February 21, 1914.*

1. CONSTITUTIONAL LAW—*the legislature has the right to abolish defenses of contributory negligence, assumption of risk and negligence of fellow-servants.* The rules of law relating to the defenses of contributory negligence, assumption of risk and the effect of the negligence of fellow-servants were established by the courts and not by the constitution, and the legislature may modify such rules or abolish them entirely.

2. SAME—*provision of Workmen's Compensation act of 1911, abolishing common law defenses, is not an exercise of police power.* The provision of the Workmen's Compensation act of 1911, which abolishes certain common law defenses of an employer who has rejected the provisions of such act, is not an exercise of police power but is merely a legislative declaration of public policy of the State.

3. SAME—*provision of the Workmen's Compensation act of 1911 limiting the word "employee" is not an unreasonable classification.* The provisions of sections 21 and 22 of the Workmen's Compensation act of 1911, which limit the term "employee," as used with reference to the employments classified in section 2 of such act, so as to include only such persons as may be exposed to the necessary

hazards of carrying on any employment enumerated in section 2, is not an unreasonable classification and is not in violation of the inhibition of the constitution as to class legislation.

4. SAME—*section 3 of Workmen's Compensation act does not deprive the employee of common law remedies.* Section 3 of the Workmen's Compensation act of 1911 does not deprive the employee of his common law remedies while permitting the employer to retain them, but, on the contrary, under the proviso thereto the employee's remedies, under certain conditions, are enlarged and the rights of the employer correspondingly restricted.

5. SAME—*being elective, the Workmen's Compensation act of 1911 is not invalid, as delegating judicial power to arbitrators.* The Workmen's Compensation act of 1911 is elective as to both employer and employee, and when both elect to come under the act the provisions thereof become a part of the contract of employment, and it cannot be said, under such circumstances, that the act is unconstitutional, as delegating judicial powers to arbitrators, as it is competent for parties to agree to settle their differences by arbitration independently of the courts.

6. SAME—*Workmen's Compensation act of 1911 does not deprive the parties of all right to trial by jury.* By electing to come under the Workmen's Compensation act an employer or employee agrees, in the first instance, to waive the right to trial by jury in case of disputes, but under the provision of the act for an appeal and trial *de novo* in the courts the right to a trial by jury is not wholly taken away.

7. SAME—*elective character of Workmen's Compensation act of 1911 obviates certain objections to its validity.* The fact that the Workmen's Compensation act of 1911 is elective and not compulsory obviates many objections to its validity, including the claims that section 9 deprives an employee of his liberty and property, that section 10 violates the constitutional inhibition against unreasonable searches and seizures, and that sections 11 and 13 deprive the employee of his right to contract and of his natural right of waiver.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

JOHN F. BOLTON, and MAURICE J. MORIARTY, for appellant.

BRADLEY, HARPER & EHEIM, (SAMUEL A. HARPER, of counsel,) for appellee.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

This appeal brings in question the constitutionality of the original Workmen's Compensation act of this State. (Laws of 1911, p. 315.) This act has been repealed by the present Workmen's Compensation act, (Laws of 1913, p. 335,) but the facts upon which this action is based arose under the former act and are governed by it.

Appellant, Joseph Deibeikis, was an employee of the Link-Belt Company, appellee. On January 31, 1913, appellant brought his action on the case against appellee to recover for injuries which it was alleged he had sustained while employed in appellee's machine shop. To the declaration appellee pleaded the general issue and a special plea, in which it is set forth that before the alleged grievances mentioned in the declaration had been committed both appellant and appellee had elected to be governed by the terms of the Workmen's Compensation act; that the appellee had posted the required notices and had done all that the act required of it; that appellant had accepted certain sums of money under the act and that appellee was ready to pay any further sums due; that appellant was governed by the terms of that act and should adjust his grievances thereunder instead of bringing his action on the case. To the special plea appellant filed a general and special demurrer, in which it was assigned that the Workmen's Compensation act of 1911 was invalid and contrary to the constitution of Illinois. The demurrer was overruled, and appellant having elected to stand by his demurrer, judgment was entered against him for costs, and this appeal was perfected.

It will be necessary, in order to intelligently discuss the questions raised, to set out a portion of the act of 1911. The first three sections are as follows:

"Sec. 1. That any employer covered by the provisions of this act in this State may elect to provide and pay compensation for injuries sustained by any employee arising out

.of and in the course of the employment according to the provisions of this act, and thereby relieve himself from any liability for the recovery of damages, except as herein provided. If, however, any such employer shall elect not to provide and pay the compensation to any employee who has elected to accept the provisions of this act, according to the provisions of this act he shall not escape liability for injuries sustained by such employee arising out of and in the course of his employment because

"1. The employee assumed the risks of the employer's business.

"2. The injury or death was caused in whole or in part by the negligence of a fellow-servant.

"3. The injury or death was proximately caused by the contributory negligence of the employee, but such contributory negligence shall be considered by the jury in reducing the amount of damages.

"*a.* Every such employer is presumed to have elected to provide and pay the compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with the State Bureau of Labor Statistics.

"*b.* Every employer within the provisions of this act failing to file such notice shall be bound hereby as to all his employees who shall elect to come within the provisions of this act until January 1 of the next succeeding year and for terms of each year thereafter: *Provided,* any such employer may elect to discontinue the payments of compensation herein provided only at the expiration of any such calendar year, by filing notice of his intention to discontinue such payments, with the State Bureau of Labor Statistics, at least sixty days prior to the expiration of any such calendar year, and by posting such notice in the plant, shop, office or place of work, or by personal service, in written or printed form, upon such employee, at least sixty days prior to the expiration of any such calendar year.

"*c*. In the event any employer elects to provide and pay compensation provided in this act, then every employee of such employer, as a part of his contract of hiring or who may be employed at the time of the taking effect of this act and the acceptance of its provisions by the employer, shall be deemed to have accepted all the provisions of this act and shall be bound thereby unless within thirty days after such hiring and after the taking effect of this act, he shall file a notice to the contrary with the secretary of the State Bureau of Labor Statistics, whose duty it shall be to immediately notify the employer, and if so notified, the employer shall not be deprived of any of his common law or statutory defenses, and until such notice to the contrary is given to the employer, the measure of liability of the employer for any injury shall be determined according to the compensation provisions of this act: *Provided, however,* that before any such employee shall be bound by the provisions of this act, his employer shall either furnish to such employee personally at the time of his hiring, or post in a conspicuous place at the plant or in the room or place where such employee is to be employed, a legible statement of the compensation provisions of this act.

"Sec. 2. The provisions of this act shall apply to every employer in the State engaged in the building, maintaining or demolishing of any structure; in any construction or electrical work; in the business of carriage by land or water and loading and unloading in connection therewith (except as to carriers who shall be construed to be excluded herefrom by the laws of the United States relating to liability to their employees for personal injuries while engaged in inter-State commerce where such laws are held to be exclusive of all State regulations providing compensation for accidental injuries or death suffered in the course of employment;) in operating general or terminal storehouses; in mining, surface mining or quarrying; in any enterprise, or branch thereof, in which explosive materials

are manufactured, handled or used in dangerous quantities; in any enterprise wherein molten metal or injurious gases or vapors or inflammable fluids are manufactured, used, generated, stored or conveyed in dangerous quantities; and in any enterprise in which statutory regulations are now or shall hereafter be imposed for the guarding, using or the placing of machinery or appliances, or for the protection and safeguarding of the employees therein, each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions and means of prosecution of the work therein, extraordinary risks to life and limb of the employee engaged therein are inherent, necessary or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for accidents to the employees therein.

"Sec. 3. No common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided shall be available to any employee who has accepted the provisions of this act or to anyone wholly or partially dependent upon him or legally responsible for his estate: *Provided,* that when the injury to the employee was caused by the intentional omission of the employer, to comply with statutory safety regulations, nothing in this act shall affect the civil liability of the employer. If the employer is a partnership, such omission must be that of one of the partners thereof, and if a corporation, that of any elective officer thereof."

The fourth section provides for the compensation to be paid by the employer who has accepted the provisions of the act, for the death of an employee, and the fifth section provides for the compensation to be paid the employee for an injury resulting in disability. Section 5½ provides for the payment of compensation, under certain circumstances, in a lump sum, and for the appointment, in proper cases, of

a guardian, conservator or administrator. The sixth section provides a basis for computing the compensation provided for in sections 4 and 5. The seventh section provides that the compensation specified in the act shall be the measure of the responsibility which the employer has assumed for injuries or death, and that it shall not be reduced in any way by contributions from employees; and the eighth section, that if it be proved that the injury to the employee resulted from his deliberate intention to cause such injury no such compensation shall be allowed. By the ninth section an employee entitled to receive disability payments is required, on the request of the employer, to submit himself for examination, at the employer's expense, to a medical practitioner selected by the employer, such examination to be made in the presence of a medical practitioner provided and paid for by the employee, if the employee so desires. The purpose of this examination is to determine the nature, extent and probable duration of the injury received, and in the event of a disagreement between the physicians selected by the employer and employee they may agree upon a third physician, or failing to agree, the judge of the county court in the county where the employee resided or was employed at the time of the injury shall select a third physician, and the majority report of such three physicians as to the nature, extent and probable duration of the injury or disability shall be used for the purpose of estimating the amount of compensation payable under the act. If the employee refuses to submit to examination or obstructs the same, his right to compensation payments shall be suspended until the examination shall have taken place. By section 10 it is provided that any question of law or fact arising in regard to the application of the act in determining the compensation payable shall be determined either by agreement of the parties or by arbitration. This section then provides a method whereby, in case such matters cannot be settled by agreement, the employer and employee shall each select a disin-

terested party, and the judge of the county court, or other court of competent jurisdiction of the county where the injured employee resided or worked at the time of the injury, shall appoint a third disinterested party, and these persons shall constitute the board of arbitrators for the purpose of hearing and determining all disputed questions of law or fact arising in regard to the application of the act. It requires both employee and employer to submit to such board of arbitrators all facts or evidence in their possession or under their control relating to the questions to be determined, and provides that the arbitrators shall hear all the evidence submitted by both parties, and empowers them to direct the injured employee to be examined by a regular practicing physician or surgeon. A copy of the report of the arbitrators is required to be filed with the State Bureau of Labor Statistics and is made binding both upon the employer and employee except for fraud and mistake, provided that either party shall have the right to appeal from the award of the arbitrators to the circuit court, or the court that appointed the third arbitrator, of the county where the injury occurred, by filing a petition in such court within twenty days after the filing of the report of the arbitrators, upon which appeal the questions in dispute shall be heard *de novo,* and either party shall have the right to demand a jury trial. Section 11 gives any employee entitled to payment under the provisions of the act a preferred claim against the property of the employer and provides that it shall not be assignable. The claim is also released from attorney's lien unless the amount of the lien be approved by a judge of a court of record. Section 12 provides that any contract or agreement made by any employer with his employee or any other beneficiary of any claim under any provisions of the act within seven days after the injury shall be presumed to be fraudulent. Section 13 deprives any employee or beneficiary of the power to waive any of the provisions of the act in regard to the amount of compensation

which may be payable. Section 14 provides for the giving of notices of injury or death, and section 15 provides that the act shall not disturb the continuance of any existing insurance, mutual aid, benefit or relief association, or department maintained, in whole or in part, by employers or employees. By section 16 any person entitled to compensation under the act shall, in the event of being unable to recover from the employer on account of insolvency, be subrogated to all the rights of such employer against any insurance company or association which may have insured such employer against loss under the act. Section 17 provides that where the injury was caused under circumstances creating a legal liability in some person other than the employer, the employee or beneficiary may take proceedings both against that person and the employer, the amount of compensation that he is entitled to under the act to be reduced by the amount of damages recovered. Section 18 provides for a review of the award at any time after six months and before eighteen months, upon the application of either party, on the ground that the incapacity of the employee has subsequently increased or diminished. Section 19 provides for reports by employers to the State Bureau of Labor Statistics of all accidents and injuries, etc. Section 20 defines who shall be included in the term "employer." Sections 21 and 22 are as follows:

"Sec. 21. The term 'employee' as used in this act shall be held to include only such persons as may be exposed to the necessary hazards of carrying on any employment or enterprise referred to in section 2 of this act. Persons whose employment is of a casual nature and who are employed otherwise than for the purpose of the employer's trade or business, are not included in the foregoing definition.

"Sec. 22. Section 21 shall not be construed to include any employee engaged in any work of an incidental character unconnected with the dangers necessarily involved in

carrying on any employment or enterprise referred to in section 2, or in any work of a clerical or administrative nature which does not expose the employee to the inherent hazards of any such employment or enterprise.":

The remaining sections provide penalties for the violation of the act and that the act shall be in force and effect after May 1, 1912.

Counsel for appellant have not made any extensive argument in support of any of the points urged, having contented themselves with simply stating the points made. The matter is so presented that it has been somewhat difficult to determine the exact grounds upon which counsel rely for reversal. As we understand the points made, the grounds relied upon are that the act is unconstitutional for the following reasons: (1) It is not a proper exercise of the police power; (2) it is class legislation; (3) it delegates judicial powers; (4) it vests the judiciary with executive powers; (5) it deprives appellant of the right of trial by jury; (6) it subjects appellant to unreasonable search; (7) it deprives appellant of his right to contract and of his natural right of waiver. The validity of certain sections of the act is questioned upon the ground that they violate section 13 of article 4 of the constitution. The question of the validity of these particular sections is not involved in this appeal, for the reason that it does not appear from this record that any right of appellant is affected by them, hence that question will not be discussed or determined in this case, but will be reserved to such time, if any, when a case shall arise wherein the question is necessarily involved.

Statutes similar to the one here under discussion have been passed in various States of the Union, and in a number of those States the courts have decided some of the questions here raised by appellant contrary to his contentions. Among these cases are *Borgnis* v. *Falk Co.* 147 Wis. 327; *State* v. *Creamer,* 85 Ohio St. 349; *Sexton* v. *New-*

*ark District Telegraph Co.* 86 Atl. Rep. (N. J.) 451; *Opinion of Justices,* 209 Mass. 607.

Taking up the points raised by appellant in the order in which they have been set out above, we are unable to see where it can be contended that this act is an attempt to exercise the police power. It will be observed that the act is elective, and that no employer or employee is compelled to accept or come within its provisions unless he chooses to do so. Therefore, unless the employer or the employee elects to come within the provisions of the act he is not affected by any of the provisions thereof. This is subject, however, to one exception. Under the conditions specified in said section 1 an employer is deprived of the common law defenses of assumed risk, contributory negligence, and that the injury or death was caused, in whole or in part, by the negligence of a fellow-servant. To deprive an employer, under such circumstances, of the right to assert those defenses is not an exercise of the police power, but is merely a declaration by the legislature of the public policy of the State in that regard. The right of the legislature to abolish these defenses cannot be seriously questioned. The rules of law relating to the defenses of contributory negligence, assumption of risk and the effect of negligence of a fellow-servant were established by the courts and not by our constitution, and the legislature may modify them or abolish them entirely, if it sees fit to do so. *Borgnis* v. *Falk Co. supra; Opinion of Justices, supra; State* v. *Creamer, supra; Mondou* v. *New York, New Haven and Hartford Railroad Co.* 223 U. S. 1.

The classification made by section 2 of the act is not questioned or attacked in any way, but appellant seems to rely upon sections 21 and 22 as constituting class legislation. The classification in section 2 seems to be a perfectly valid and reasonable one. If it is valid and reasonable there appears no ground upon which to challenge the validity of sections 21 and 22. These sections merely limit an

"employee," as the term is used in that act, to include only such as may be exposed to the necessary hazards of carrying on any employment or enterprise enumerated in section 2. These sections are meant to exclude anyone who may be occupying a mere clerical position and whose work is such that he is not subject to any of the hazards of the general business in which the employer is engaged. This is a proper and reasonable classification and does not violate any inhibition of our constitution.

It is contended that section 3 makes an improper classification, in that it deprives the employee of his common law remedies while the employer is permitted to retain them. This is clearly a misapprehension, as the proviso in that section enlarges the remedy of the employee and correspondingly restricts that of the employer. By this proviso, in case an employee receives an injury as the result of the intentional omission of the employer to comply with statutory safety requirements, the employer, although having elected to come within the provisions of this act, cannot avail himself of anything in the act to affect his liability under such circumstances.

The other objections urged may all be answered by the statement that the act is elective and not compulsory. Were the act deprived of its elective feature and made compulsory upon every employer and employee engaged in the enterprises enumerated in section 2 very different and more serious questions would be presented. Being elective, the act does not become effective as to any employer or employee unless such employer or employee chooses to come within its provisions. Having once elected to come within the provisions of the act, as long as such election remains in force the act is effective as to the party or parties making the election, and in case an employer and an employee both elect to come within the provisions of the act, the act itself then becomes a part of the contract of employment and can be enforced as between the parties as such. Under this

261 — 30

view it cannot be said that by this act judicial power is delegated to boards of arbitrators, contrary to the provisions of our constitution. Parties to a contract may make valid and binding agreements to submit questions in dispute or any disagreement that may arise to a board of arbitrators composed of persons or tribunals other than the regularly organized courts, and such agreements will be enforced. (*Pacaud* v. *Waite,* 218 Ill. 138.) By electing to accept the provisions of this act the employer and the employee thereby agree to settle by arbitration any dispute that may arise between them in reference to compensation for injury. While the right of trial by jury is guaranteed under our constitution, it is a right that anyone may waive if he shall see fit, and by electing to come within the provisions of the law an employer or employee elects, in the first instance, to submit any dispute that may arise to a board of arbitrators without the intervention of any court or jury. It will be observed that the act does not make the finding and award of the board of arbitrators selected under its provisions final. Either party feeling aggrieved at the award has the right to appeal to a court of record, where the matter is heard *de novo* and where either party has the right to demand a trial by jury. It will thus be seen that even though the employee should elect to come within the provisions of the act he is not wholly deprived of a trial by jury.

It is contended that section 9 also deprives the employee of his liberty and property, that section 10 violates the inhibition against unreasonable search and seizures, and that sections 11 and 13 deprive the employee of his right to contract and of his natural right of waiver. These contentions are all fully answered by the statement that the employee is not compelled to submit to the provisions of the act, but has the power to elect whether or not he will come within its terms and be bound by them. If any of the provisions of the act are objectionable to him he is not re-

quired to subject himself to the act.   If he does elect to do so he cannot be heard to complain that the contract he has voluntarily entered into is an unsatisfactory one.

The act is not subject to the objections urged, and the judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*